# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION

Diebold, Incorporated and
Diebold Self-Service Systems

     Plaintiffs,

v.

Nautilus Hyosung Inc. and
Nautilus Hyosung America Inc.,

     Defendants.

Civil Action No. **1 : 15 C V 2153**

JURY TRIAL DEMANDED

JUDGE NUGENT

## COMPLAINT MAG. JUDGE BAUGHMAN

Plaintiffs Diebold, Incorporated and Diebold Self-Service Systems (collectively, "Diebold") hereby set forth their Complaint against Nautilus Hyosung Inc. and Nautilus Hyosung America, Inc. (collectively, "Hyosung" or "Defendants"), as follows:

## NATURE OF THE CASE

1.    This action is for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* Diebold seeks monetary damages and injunctive relief in this action.

## THE PARTIES

2.    Plaintiff Diebold, Incorporated is an Ohio corporation with its principal place of business at 5995 Mayfair Road, North Canton, Ohio 44720.

3.    Plaintiff Diebold Self-Service Systems is a New York general partnership with its principal place of business at 5995 Mayfair Road, North Canton, Ohio 44720. Diebold Self-Service Systems is a wholly-owned subsidiary of Diebold, Incorporated.

4.    Upon information and belief, Nautilus Hyosung Inc. is a company organized and existing under the laws of South Korea, having a principal place of

business at 281 Gwangpyeong-ro, Gangnam-gu Gu, Gangnam-Gu, Seoul, South Korea. Upon information and belief, Nautilus Hyosung, Inc., among other things, engages in the sale for importation in the United States and importation into the United States of automated teller machines, ATM modules, components thereof, and products containing the same, including the Accused Products described below.

5.      Upon information and belief, Nautilus Hyosung America Inc. is a company organized and existing under the laws of the State of Delaware, having a principal place of business at 6641 N. Beltline Road, Suite 100, Irving, TX 75063.  Upon information and belief, Nautilus Hyosung America Inc. among other things, engages in the importation into the United States and sale after importation into the United States of automated teller machines, ATM modules, components thereof, and products containing the same, including the Accused Products described below.

<u>**JURISDICTION AND VENUE**</u>

6.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Thus, this Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      Hyosung is a South Korean-based manufacturer, distributor, and retailer of automated teller machines for the retail industry and financial institutions with operations across the globe, including within the State of Ohio, where it maintains its Global Software Center.

8.      Upon information and belief, Hyosung sells more than 92,000 ATMs annually, including sales throughout the State of Ohio, and including this District.

9.      This Court has personal jurisdiction over Defendants, who have engaged in and conducted substantial business within the State of Ohio and in this District, including engaging in at least a portion of the infringing acts alleged herein through the sales, marketing, and service of infringing products in the State of Ohio and in this District.  As such, Defendants have purposefully directed their activities at, and caused damages to, residents of this District.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b), because this is an action for patent infringement, Defendants have a regular and established place of business, and Defendants have committed acts of infringement in this District.

## BACKGROUND

11.      Since its founding in 1859, Diebold has been a leader in providing innovative products and services for the financial industry, first manufacturing safes and vaults, and later manufacturing more diversified financial equipment and providing first class service.  In 1973, Diebold introduced its landmark Total Automatic Banking System 500 (TABS 500), the first automatic banking system of its kind.

12.      Since then, Diebold has continued to be an innovator and leader in the security and financial self-services industry.  In 2003, Diebold launched a new line of ATMs – the Opteva® series – setting a new level of performance, reliability and flexibility in the industry.  And in 2015, Diebold launched its next generation line of ATMs, (named the "Diebold Series").  Opteva® and the Diebold Series were the result of many years and millions of dollars of domestic research and development.

13.      Research and development are keys to Diebold's success and provide the necessary cornerstone for its cutting-edge products.  Diebold's research, development,

and innovation in the financial and security industries have resulted in the issuance of more than 1,000 patents over the years.

14.    This case involves six (6) patents that represent Diebold's pioneering innovations in deposit automation, cash dispensing, and security.  These important patents include: (i) U.S. Patent No. 6,082,616, entitled "Automated Banking Machine Enclosure" (the "616 Patent"); (ii) U.S. Patent No. 7,121,461, entitled "Reject Bin Having Separated Storage Areas For Diverted And Retracted Currency Notes" (the "461 Patent"); (iii) U.S. Patent No. 7,249,761, entitled "ATM Currency Presenter Gate Arrangement" (the "761 Patent"); (iv) U.S. Patent No. 7,229,010, entitled "Check Accepting and Cash Dispensing Automated Banking Machine System and Method" (the "010 Patent"); (v) U.S. Patent No. 7,314,163, entitled "Check Accepting and Cash Dispensing Automated Banking Machine System and Method" (the "163 Patent"); and (vi) U.S. Patent No. 7,832,631, entitled "Method of Reading Coded Records Including Magnetic Indicia on Checks Deposited in an Automated Banking Machine" (the "631 Patent") (collectively, the "Asserted Patents").

15.    The 616 Patent was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on July 4, 2000.  A copy of the 616 Patent is attached hereto as Exhibit A.

16.    Plaintiff Diebold Incorporated is the owner and assignee of all rights, title, and interest in and to the 616 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

17.    The 461 Patent was duly and lawfully issued by the USPTO on October 17, 2006.  A copy of the 461 Patent is attached hereto as Exhibit B.

4

18.     Plaintiff Diebold Self-Service Systems is the owner and assignee of all rights, title, and interest in and to the 461 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

19.     The 010 Patent was duly and lawfully issued by the USPTO on June 12, 2007. A copy of the 010 Patent is attached hereto as Exhibit C.

20.     Plaintiff Diebold Incorporated is the owner and assignee of all rights, title, and interest in and to the 010 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

21.     The 761 Patent was duly and lawfully issued by the USPTO on July 31, 2007. A copy of the 761 Patent is attached hereto as Exhibit D.

22.     Plaintiff Diebold Self-Service Systems is the owner and assignee of all rights, title, and interest in and to the 761 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

23.     The 163 Patent was duly and lawfully issued by the USPTO on January 1, 2008. A copy of the 163 Patent is attached hereto as Exhibit E.

24.     Plaintiff Diebold Incorporated is the owner and assignee of all rights, title, and interest in and to the 163 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

25.     The 631 Patent was duly and lawfully issued by the USPTO on November 16, 2000. A copy of the 631 Patent is attached hereto as Exhibit F.

26.     Plaintiff Diebold Self-Service Systems is the owner and assignee of all rights, title, and interest in and to the 631 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

## CLAIMS

27.     Plaintiffs incorporate the preceding paragraphs by reference as if fully set forth herein.

28.     As discussed in further detail below, Defendants manufacture, import, and sell within the United States certain automated teller machines and components thereof (the "Accused Products") that infringe the Asserted Patents.

29.     Hyosung also contributes to the infringement of the Asserted Patents by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused Products and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the inventions described in the Asserted Patents.  These devices are known by Hyosung to be especially made or especially adapted for use in the infringement of the Asserted Patents.  Specifically, Hyosung sells the Accused Products to resellers and end users with knowledge that the devices infringe.  End users of those devices directly infringe the Asserted Patents.

30.     In addition, Hyosung also induces, and continues to induce, infringement of the Asserted Patents by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

31.     Upon information and belief, Hyosung had actual knowledge of the Asserted Patents as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the Asserted Patents; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed each of the Asserted Claims;

and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

32.     As such, Plaintiffs assert the following against Defendants:

## CLAIM 1
### (Infringement of the 616 Patent)

33.     Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1, 2, 5- 8, 10, 16-18, 20, 22, 23, 26, and 27 of the 616 Patent in violation of 35 U.S.C. § 271 with respect to Hyosung ATMs having a rollout tray with a service opening including, but not limited to, the Halo, Halo II, NH2600, NH2700, NH200CE, MX5000CE, MX5000SE, MX5300CE, MX5300XP, and MX5600 ATMs.

34.     For example, Hyosung directly infringes the 616 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States Hyosung ATMs having a rollout tray with a service opening including, but not limited to, the Halo, Halo II, NH2600, NH2700, NH200CE, MX5000CE, MX5000SE, MX5300CE, MX5300XP, and MX5600.

35.     Hyosung has also induced, and continues to induce, infringement of the 616 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

36.     For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 616 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage its customers to perform certain maintenance

procedures through the service opening of a rollout tray, including the repair or replacement of the encrypted pin pad ("EPP"), and (ii) the use of such procedures infringes the asserted claims of the 616 Patent.

37.     Hyosung also contributes to the infringement of the 616 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation the Accused Products having a rollout tray with a service opening, for which there is no suitable or substantial noninfringing use and which embody a material part of the inventions described in the 616 Patent.  In addition, upon information and belief, Accused Products having a rollout tray with a service opening are known by Hyosung to be made or especially adapted for use in the infringement of the Asserted Patents.

38.     Upon information and belief, Hyosung had actual knowledge of the 616 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 616 Patent; (ii) described how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims using claim charts; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

39.     Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 616 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

40.     Upon information and belief, Hyosung will continue to infringe the 616 Patent unless permanently enjoined by this Court.  Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from

continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 616 Patent and from further inducing or contributing to the infringement of the 616 Patent.

### CLAIM 2
### (Infringement of the 461 Patent)

41.    Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1-8, 12-18, and 21-27 of the 461 Patent in violation of 35 U.S.C. § 271 with respect to all Hyosung ATMs having a cassette with compartments for retracted and rejected media, Hyosung Reject/Retract Cassettes, Hyosung CDUs, and/or a Hyosung cassette with compartments for retracted and rejected media including, but not limited to, the following Hyosung ATMs: MX5600, MX5600T, MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

42.    For example, Hyosung directly infringes the 461 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States Hyosung ATMs having a cassette with compartments for retracted and rejected media, Hyosung Reject/Retract Cassettes, Hyosung CDUs, and/or a Hyosung cassette with compartments for retracted and rejected media including, but not limited to, the following Hyosung ATMs: MX5600, MX5600T, MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

43.    Hyosung has also induced, and continues to induce, infringement of the 461 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

44.     For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 461 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage its customers to purchase reject/retract cassettes and install reject/retract cassettes in the Accused Products (ii) the use of Hyosung ATMs that include a reject/retract cassette infringes the 461 Patent, (iii) Hyosung advertises and distributes manuals that encourage individuals who maintain or service the Accused Products to perform certain maintenance and service procedures using the reject/retract cassette, including the removal of notes from the reject/retract cassette, and (iv) the use of such procedures infringes the asserted claims of the 461 Patent.

45.     Hyosung also contributes to the infringement of the 461 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation reject/retract cassettes for use with the cash dispensing unit of Hyosung's ATMs, for which there is no suitable or substantial noninfringing use and which embody a material part of the inventions described in the 461 Patent.  In addition, upon information and belief, reject/retract cassettes for use in the cash dispensing unit of Hyosung's ATMs are known by Hyosung to be made or especially adapted for use in the infringement of the Asserted Patents.

46.     Upon information and belief, Hyosung had actual knowledge of the 461 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 461 Patent; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims; and (iii) described how

Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

47. Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 461 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

48. Upon information and belief, Hyosung will continue to infringe the 461 Patent unless permanently enjoined by this Court. Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 461 Patent and from further inducing or contributing to the infringement of the 461 Patent.

## CLAIM 3
### (Infringement of the 010 Patent)

49. Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1-15, 18-20, 22-26, 28-30 of the 010 Patent in violation of 35 U.S.C. § 271 with respect to all deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor and/or check bin that uses a plunger including at least the following Hyosung ATMs: Hyosung MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

50. Hyosung directly infringes the 010 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor and/or check bin that uses a plunger including at least the following Hyosung ATMs: Hyosung MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

51.    Hyosung has also induced, and continues to induce, infringement of the 010 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

52.    For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 010 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage its customers to purchase BCAs and provide detailed instruction regarding how to install the BCA in an ATM and (ii) an ATM that includes a BCA infringes the asserted claims of the 010 Patent.  In addition, upon information and belief, Hyosung encourages ATM users to use Hyosung ATMs that include a BCA by providing user manuals and advertisements that encourage use of deposit automation features of those ATMs.

53.    Hyosung also contributes to the infringement of the 010 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation BCAs for Hyosung ATMs and/or check bins, for which there is no suitable or substantial noninfringing use and which embody a material part of the inventions described in the 010 Patent.  In addition, upon information and belief, Hyosung's BCAs and check bins are known by Hyosung to be made or especially adapted for use in the infringement of the Asserted Patents.

54.    Upon information and belief, Hyosung had actual knowledge of the 010 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 010 Patent; (ii) described in claim charts how Hyosung, its customers, and/or users

of the Accused Products infringed certain of the Asserted Claims; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

55.     Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 010 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

56.     Upon information and belief, Hyosung will continue to infringe the 010 Patent unless permanently enjoined by this Court.  Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 010 Patent and from further inducing or contributing to the infringement of the 010 Patent.

## CLAIM 4
### (Infringement of the 761 Patent)

57.     Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1-4, 6, 14, 15, and 19 of the 761 Patent in violation of 35 U.S.C. § 271 with respect to all Hyosung ATMs having a cash dispensing unit including a presenter gate, Hyosung CDUs and/or Hyosung cash dispensing units including a presenter gate, including at least the following Hyosung ATMs: MX5600, MX5600T, MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

58.     Hyosung directly infringes the 761 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States Hyosung ATMs having a cash dispensing unit including a presenter gate, Hyosung CDUs and/or

Hyosung cash dispensing units including a presenter gate, including at least the following Hyosung ATMs: MX5600, MX5600T, MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

59.     Hyosung has also induced, and continues to induce, infringement of the 761 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

60.     For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 761 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage ATM users to purchase CDUs that dispense stacks of notes through a presenter gate and (ii) the use of Hyosung ATMs with such a CDU infringes the 761 Patent.

61.     Hyosung also contributes to the infringement of the 761 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation cash dispensing units that dispense stacks of notes through a presenter gate, for which there is no suitable or substantial noninfringing use and which embody a material part of the inventions described in the 761 Patent.  In addition, upon information and belief, cash dispensing units that dispense stacks of notes through a presenter gate are known by Hyosung to be made or especially adapted for use in the infringement of the Asserted Patents.

62.     Upon information and belief, Hyosung had actual knowledge of the 761 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies

14

of the 761 Patent; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

63.    Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 761 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

64.    Upon information and belief, Hyosung will continue to infringe the 761 Patent unless permanently enjoined by this Court. Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 761 Patent and from further inducing or contributing to the infringement of the 761 Patent.

**CLAIM 5**
**(Infringement of the 163 Patent)**

65.    Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1-5 and 13-24 of the 163 Patent in violation of 35 U.S.C. § 271 with respect to all deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor, Cash & Check in Module, and/or a module for modifying an image of a check including, but not limited to, the following Hyosung ATMs: MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, MX7600DR, MX7800 and MX8800.

66.    Hyosung directly infringes the 163 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor, Cash & Check in

15

Module, and/or a module for modifying an image of a check including, but not limited to, the following Hyosung ATMs: MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, MX7600DR, MX7800 and MX8800.

67.     Hyosung has also induced, and continues to induce, infringement of the 163 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

68.     For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 163 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage ATM users to deposit a check using deposit automation and prints receipts including a modified image of the deposited check and (ii) the use of Hyosung's deposit automation enabled ATMs in such a manner infringes the asserted claims of the 163 Patent.

69.     Hyosung also contributes to the infringement of the 163 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation ATMs that include deposit automation modules, which includes a module for modifying an image of a check, for which there is no suitable or substantial noninfringing use and which embody a material part of the inventions described in the 163 Patent. In addition, upon information and belief, Hyosung's deposit automation enabled ATMs are known by Hyosung to be made or especially adapted for use in the infringement of the Asserted Patents.

70.     Upon information and belief, Hyosung had actual knowledge of the 163 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 163 Patent; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

71.     Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 163 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

72.     Upon information and belief, Hyosung will continue to infringe the 163 Patent unless permanently enjoined by this Court.  Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 163 Patent and from further inducing or contributing to the infringement of the 163 Patent.

## CLAIM 6
### (Infringement of the 631 Patent)

73.     Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1-8 and 12-20 of the 631 Patent in violation of 35 U.S.C. § 271 with respect to all deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor and/or recognition module with movable and a stationary MICR head including, but not limited to, the following Hyosung ATMs: MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

74.    Hyosung directly infringes the 631 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor and/or recognition module with movable and a stationary MICR head including, but not limited to, the following Hyosung ATMs: MX7600, MX7600I, MX7600T, MX7600D, MX7600FFL, and MX7600DR.

75.    Hyosung has also induced, and continues to induce, infringement of the 631 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

76.    For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 631 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage its customers to purchase BCAs and provide detailed instructions regarding how to install the BCA in an ATM and (ii) an ATM that includes a BCA infringes the asserted claims of the 631 Patent.  In addition, upon information and belief, Hyosung encourages ATM users to use Hyosung ATMs that include a BCA by providing user manuals and advertisements that encourage use of deposit automation features of those ATMs.

77.    Hyosung also contributes to the infringement of the 631 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation the Accused Products and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use

and which embody a material part of the inventions described in the 631 Patent.  These devices are known by Hyosung to be especially made or especially adapted for use in the infringement of the 631 Patent.  Specifically, Hyosung sells the Accused Products to resellers and end users with knowledge that the devices infringe.  End users of those devices directly infringe the 631 Patent.

78.     Upon information and belief, Hyosung had actual knowledge of the 631 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 631 Patent; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

79.     Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 631 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

80.     Upon information and belief, Hyosung will continue to infringe the 631 Patent unless permanently enjoined by this Court.  Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 631 Patent and from further inducing or contributing to the infringement of the 631 Patent.

## DAMAGES

81.     For the above-described infringement, Diebold has suffered injury and seeks a permanent injunction and damages, in an amount to be proven at trial, to

adequately compensate it for Hyosung's infringement of the Asserted Patents. Such damages should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

## JURY DEMAND

82.  Diebold requests a jury trial of all issues triable of right by a jury.

## PRAYER FOR RELIEF

83.  WHEREFORE, Diebold respectfully requests the following relief:

a.  A judgment in favor of Diebold that Hyosung has infringed the 616 Patent, whether literally or under the doctrine of equivalents, as described herein;

b.  A judgment in favor of Diebold that Hyosung has infringed the 461 Patent, whether literally or under the doctrine of equivalents, as described herein;

c.  A judgment in favor of Diebold that Hyosung has infringed the 761 Patent, whether literally or under the doctrine of equivalents, as described herein;

d.  A judgment in favor of Diebold that Hyosung has infringed the 010 Patent, whether literally or under the doctrine of equivalents, as described herein;

e.  A judgment in favor of Diebold that Hyosung has infringed the 163 Patent, whether literally or under the doctrine of equivalents, as described herein;

f.      A judgment in favor of Diebold that Hyosung has infringed the 631 Patent, whether literally or under the doctrine of equivalents, as described herein;

g.      A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 616 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

h.      A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 461 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

i.      A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 761 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

j.      A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 010 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

k. A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 163 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

l. A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 631 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

m. An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 616 Patent and from further inducing or contributing to the infringement of the 616 Patent.

n. An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 461 Patent and from further inducing or contributing to the infringement of the 461 Patent.

o. An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 761 Patent and from further inducing or contributing to the infringement of the 761 Patent.

p.      An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 010 Patent and from further inducing or contributing to the infringement of the 010 Patent.

q.      An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 163 Patent and from further inducing or contributing to the infringement of the 163 Patent.

r.      An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 631 Patent and from further inducing or contributing to the infringement of the 631 Patent.

s.      Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ R. Eric Gaum
R. Eric Gaum (0066573)
regaum@hahnlaw.com
Nathan B. Webb (0084506)
nwebb@hahnlaw.com
Erin A. Wiggins (0092718)
ewiggins@hahnlaw.com
HAHN LOESER & PARKS LLP
One GOJO Plaza, Suite 300
Akron, Ohio 44311
Phone:  330-864-5550
Fax:  330-864-7986

*Attorneys for Plaintiffs Diebold,*
*Incorporated and Diebold*
*Self-Service Systems*


*Pro Hac Vice* Admission to be Requested:

Patrick J. Flinn
Patrick.Flinn@alston.com
Keith E. Broyles
Keith.Broyles@alston.com
David S. Frist
David.Frist@alston.com
Joshua M. Weeks
Joshua.Weeks@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4200
Atlanta, Georgia 30309-3424
Phone:  404-881-7000
Fax:  404-881-7777

*Attorneys for Plaintiffs Diebold,*
*Incorporated and Diebold*
*Self-Service Systems*

24